**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| Curtis Young, | |
| Plaintiff, | Case No:<br>Hon. _____<br>United States District Judge |
| v. | |
| Great Lakes Water Authority, | Hon. _____<br>United States Magistrate Judge |
| Defendant. | |

## COMPLAINT

Plaintiff Curtis Young, by and through his attorneys, Pitt McGehee, Palmer & Rivers, PC, complains of Defendant Great Lakes Water Authority for violating his rights under the Americans with Disabilities Act 42 U.S.C. § 12101, et seq. ("ADA"), and the Persons with Disabilities Civil Rights Act MCL 37.1101 ("PWDCRA"), and states as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.    Plaintiff Curtis Young, born in 1966, is a resident of Detroit, County of Wayne, Michigan.

2.    Defendant Great Lakes Water Authority ("GLWA") is a municipal authority and public body with its principal place of business in Detroit, Michigan.

1

3.      On or about 2014, GLWA assumed operations of the Detroit Water and Sewage Department, also a municipal authority and public body.

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 over Plaintiff's claims arising under federal law.

5.      This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state-law claims based on the same core factual allegations as his federal claims.

6.      Plaintiff has exhausted all agency requirements prior to bring this action and received his notice of a right to sue from the EEOC.

7.      Plaintiff files this action within the time agreed upon by the parties to toll the 90-day right-to-sue period so that the parties could pursue pre-litigation resolution of this matter.

8.      Venue is proper because Defendant's principal place of business is in the Eastern District of Michigan and the facts alleged transpired in this District.

## STATEMENT OF FACTS

9.      Curtis Young is an African American man who is profoundly deaf.

10.     Since Mr. Young was raised in a hearing community, he is capable of lip reading and speech; therefore, he can converse with hearing individuals.

11.     However, when Mr. Young reads lips for long periods of time and in a setting where there are multiple speakers, he becomes physically and mentally exhausted.

12.     When Mr. Young becomes exhausted from extensive lip reading, the result is both miscommunications and missed information.

13.     Therefore, when Mr. Young is faced with an extensive oral conversation or finds himself in an environment where multiple people will be speaking, he requires the assistant of an American Sign Language ("ASL") interpreter or a "Real-Time" Captioning device ("CART").

14.     Otherwise, in short and one-on-one conversations, Mr. Young gets by adequately with his lip-reading and oral-speech capabilities.

15.     Mr. Young also wears a hearing aid that amplifies sounds like alarms for his safety; however, this device cannot assist him in hearing spoken language.

16.     There is no medical procedure available that could restore Mr. Young's hearing.

**Curtis Young's Employment with Great Lakes Water Authority**

17.     Curtis Young began working for Defendant's predecessor organization, the Detroit Water and Sewage Department ("DWSD"), in 1996 and was assigned to test and repair water meters.

18.     Between 2002 and 2010, Mr. Young worked for Defendant's predecessor, DWSD, in the industrial waste control department as an Assistant Investigator and in that role collected waste water samples for delivery to testing labs.

19.     In 2010, Mr. Young was promoted to the position of Investigator in the fresh water division, and he has held this position ever since.

20.     In his capacity as an Investigator, Mr. Young goes by himself or with another investigator to various sites to collect water samples for regular testing and collects samples when there have been specific complaints about water quality.

21.     Defendant GLWA conducts performance reviews several times a year for the employees in Mr. Young's division.

22.     Before 2017, Mr. Young received extremely high performance reviews.

### Curtis Young Asserts his Rights Under the Americans with Disabilities Act

23.     In October of 2015, Mr. Young made a request to his manager, Mary Lynn Semegen, who forwarded his request to Sigele Rutledge from Human Resources, to provide an ASL interpreter for a crucial work meeting that was to

inform workers about the transitions regarding the transitions from DWSD to GLWA.

24.     Defendant provided an interpreter for Mr. Young as an accommodation so that he could attend and participate in this meeting.

25.     Around this time, it became common for Mr. Young's team to hold staff meetings.

26.     On December 15, 2016, Mr. Young provided his manager, Mary Lynn Semegen, with a written request to be provided with an interpreter during mandatory daily staff meetings and training sessions.

27.     Semegen forwarded Mr. Young's request to the Human Resource Manager, Karen Darty, along with Terry Daniel and Sigele Rutledge.

28.     Defendant refused Mr. Young's request for this accommodation, yet nonetheless scheduled him for mandatory training in January of 2017.

29.     Mr. Young attended the training and informed the instructor that he had was deaf and would need an interpreter, but the instructor ignored this request.

30.     On January 26, 2017, Mr. Young filed a charge with the EEOC alleging that his employer, Defendant GLWA, was refusing to grant him accommodations he needed.

31.    In February of 2017, Mr. Young met with Sigele Rutledge of Human Resources to discuss his requests for accommodation.

32.    At this February 2017 meeting, Mr. Young requested an interpreter for the daily staff meetings.

33.    At this meeting in February 2017, Mr. Young also requested that he be allowed to resume "confined space assignments," which his supervisor had told him he could not do because it wasn't "safe" for Mr. Young.

34.    Mr. Young provided Defendant at this time with a note from his physician explaining that Mr. Young's deafness is profound and requires some accommodations for oral communication, but that he is otherwise fully capable of performing all his job functions.

35.    Mr. Young requested an interpreter for staff meetings because he is not able to hear the information his team members are receiving in an environment like the staff meeting, where many different people are talking around this time.

36.    Mr. Young's need for an interpreter in team meetings is significant because his team has 12 people in 2018, currently has 15 people, and is expected to grow even larger.

37.   Mr. Young's supervisor required a daily morning staff meeting for all of these people, and this meeting would last between ten minutes and an hour.

38.   Therefore, Mr. Young made a request to his manager and to HR for an interpreter for these meetings because the number of people talking made it difficult for Mr. Young to participate actively through lip reading alone.

39.   This request for an interpreter at staff meetings was denied.

40.   Instead, Hayes said to Mr. Young, "we're getting more people, so you need to figure out how to hear what's going on."

41.   Defendant also informed Mr. Young that it was denying his request to do "confined space assignments" even though Mr. Young had previously done "confined space assignments" without any issues.

42.   In denying Mr. Young's request to resume "confined space assignments," Defendant never engaged with Mr. Young on any other possible solutions or accommodations that would make this opportunity accessible to him.

### Curtis Young's Supervisor Disparages Him in Writing Because he is Deaf

43.   In June of 2017, Mr. Young's supervisor, Yvette Hayes, gave him a lower review than had had received before from Defendant.

44.    Among the comments in this performance review was that: "Due to disabilities employee must ask for clarification on communications when working with others."

45.    Additionally, Hayes rated Mr. Young as 8 out of 12 points for "Communication" on this same evaluation.

46.    Defendant has also denied Mr. Young a pay raise since July of 2017.

47.    When he asked why he was not receiving a raise, an HR representative informed him that he was at the maximum pay rate for his level.

48.    However, individuals at his same level but with less seniority who are not deaf have been paid more than Mr. Young.

49.    It was only in January of 2019 that Defendant corrected the disparity in pay between Mr. Young and others with less seniority by halting future raises for the others.

50.    Defendant did not provide Mr. Young with any back pay to reflect the disparity in his wages from July 2017 through January of 2019.

**Defendant Temporarily Provides a Note-Taker, but it is Not an Effective Accommodation**

51.    In December of 2017, Defendant assigned one of Mr. Young's coworkers to take notes for him during the morning staff meetings.

8

52.     Hayes instructed the co-worker to give the notes to her, and not directly to Mr. Young, which further impeded his access to the information others learned in team meetings.

53.     This notetaking was provided for only two weeks.

54.     Mr. Young found the notetaking ineffective, because he could not participate actively or ask questions during the meeting.

55.     Mr. Young also found the notetaking to be an unacceptable accommodation because the notes his coworker provided were lacking important details.

56.     Around December of 2017, Defendant promised Mr. Young that it would provide ASL interpretation for any meeting that lasted 30 minutes or longer.

57.     During many subsequent work days, including January 15, February 2, March 15, May 4, June 13, June 18, July 18, October 4, December 13 and December 20, 2018, Mr. Young attended meetings that were longer than 30 minutes and/or covered important topics but for which Defendant provided no interpreter.

58.     In January of 2018, Mr. Young again approached his manager and HR to request an interpreter or a real-time captioning system ("CART").

59.     Defendant again refused to provide Mr. Young with the accommodation he requested.

60.     On or about February 1, 2018, Mr. Young filed a second charge with the EEOC alleging in part that GLWA had denied him a raise in October 2017 in retaliation for his filing the January 2017 EEOC charge.

61.     In October of 2018, the EEOC informed Mr. Young that it had found cause that GLWA had discriminated against him in violation of the ADA.

62.     The EEOC sought to secure the CART service as the accommodation for Mr. Young.

63.     However, GLWA rejected this accommodation and instead insisted on a notetaker.

64.     The efforts at conciliation through the EEOC broke down over Defendant's refusal to provide the CART service.

65.     In the meantime, Defendant has not provided the necessary and reasonable accommodations for Mr. Young to participate fully in his daily staff meetings.

66.     Mr. Young has suffered blurred vision, severe headaches, and emotional distress from attempting to participate in team meetings by lip reading.

67.    Mr. Young has suffered severe emotional distress from the alienation and isolation he experiences from attending mandatory team meetings without an appropriate accommodation.

68.    After the EEOC's efforts at conciliation failed, the Commission issued Mr. Young a Right-to-Sue letter on November 29, 2018, stating that it "found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge but could not obtain a settlement with the Respondent that would provide relief to you."

69.    Having received this letter notifying him of his right to sue, Mr. Young brings this lawsuit and makes the following charges against Defendant:

**Count 1: Discrimination in Violation of the ADA, 42 U.S.C. § 12112**

70.    Plaintiff incorporates the above allegations by reference here.

71.    Plaintiff has a disability as defined by the ADA, namely that he is deaf.

72.    Plaintiff, with or without reasonable accommodation, can perform the essential functions of his employment and has done so since 1996.

73.    Defendant is Plaintiff's employer as defined by the ADA.

74.    Defendant denied Plaintiff wage increases when similarly situated individuals who do not have a disability were given wage increases.

11

75.    Defendant expressly listed Plaintiff's disability as a "weakness" on his performance review, when it is not relevant to his work performance and denied accommodations Plaintiff requested to ensure that he would be able to communicate effectively in team meetings.

76.    Defendant denied Plaintiff assignments that he is qualified to do and desires to do because Defendant unfairly and incorrectly views Plaintiff as disabled and thus incapable.

77.    Plaintiff's supervisor has callously ordered him to "figure out how to hear what's going on" when his deafness cannot be corrected.

78.    Plaintiff has  sought but been denied accommodations that would allow him to participate effectively in meetings and training sessions.

79.    Plaintiff has suffered extreme emotional distress, painful headaches, humiliation, and lost income as a result of this discrimination.

WHEREAS, Defendant has unlawfully discriminated against Plaintiff on the basis of his disability with regard to his compensation, advancement, opportunities, and privileges of his employment, 42 U.S.C. § 12112, and has done so in a way that demonstrates the intent to discriminate with malice and reckless indifference to Plaintiff's rights under the ADA, 42 U.S.C. § 1981a, Plaintiff seeks the following remedies and relief from the Court:

a.   Order Defendant to provide Plaintiff with the accommodation of a CART interpreting system or comparable interpretation for all meetings,

b.   Order Defendant to engage in a good-faith interactive process with Plaintiff aimed at accommodating his request to perform "confined space assignments,"

c.   Economic Damages,

d.   Injunctive Relief,

e.   Compensatory Damages,

f.   Punitive Damages,

g.   Reasonable attorney's fees, witness fees, and other costs of litigation allowed under 42 U.S.C. § 2000e-5(g), and

h.   Any other relief or remedy deemed by the Court to be appropriate.

## Count 2: Failure to Provide Reasonable Accommodations as Required by the ADA, 42 U.S.C. § 12112 (b)(5)

80.   Plaintiff incorporates the above allegations by reference here.

81.   Plaintiff is an individual with a disability as defined by the ADA.

82.   Defendant is Plaintiff's employer as defined by the ADA.

83.     Defendant was aware of Plaintiff's disability—namely, that he is deaf.

84.     Defendant has failed to provide qualified interpreters or technological devices to ensure that mandatory staff meetings are accessible to Plaintiff.

85.     Defendant failed to engage with Plaintiff interactively to identify accommodations that would allow him to take on "confined space assignments" what he is otherwise qualified to do.

86.     Defendant intentionally denied Plaintiff appropriate accommodations and made callous statements demonstrating a lack of good faith in attempting to satisfy its duties under the ADA.

WHEREAS, Defendant has failed to provide reasonable accommodations to Plaintiff or otherwise engage with him on what adjustments, modifications, or provisions would allow make the existing facilities and requirements of his job accessible to him, as required by 42 U.S.C. § 12112(b)(5), Plaintiff seeks the following remedies and relief from the Court as allowed by 42 U.S.C. § 1981a(3), 42 U.S.C. § 2000e-5, and other applicable statutes:

> a.     An ORDER requiring Defendant to provide Plaintiff with the accommodation of a CART interpreting system or comparable interpretation for all meetings,

14

> b.    An ORDER requiring Defendant to engage in a good-faith
> interactive process with Plaintiff aimed at accommodating
> his request to perform "confined space assignments,"
>
> c.    Economic Damages,
>
> d.    Injunctive Relief,
>
> e.    Compensatory Damages,
>
> f.    Punitive Damages,
>
> g.    Reasonable attorney's fees, witness fees, and other costs of
> litigation, and
>
> h.    Any other relief or remedy deemed by the Court to be
> appropriate.

**Count 3: Retaliation in Violation of the ADA**

87.    Plaintiff incorporates the above allegations by reference here.

88.    On January 26, 2017, Plaintiff exercised his rights under the ADA by filing a claim with the EEOC alleging that he had been denied his requests for reasonable accommodations.

89.    In February of 2017, Plaintiff met with Defendant to discuss his accommodation needs; however, his requests were denied.

90.     In June of 2017, Plaintiff's supervisor gave him a lower evaluation than he had ever received before and in at least two places referred to his disability as a reason for his "weakness" in communication.

91.     Even though Defendants subsequently rescinded this evaluation and provided an exemplary one instead, the blatant animus in that original evaluation has not been removed or cured.

92.     In October of 2017, Plaintiff was told that he could not receive a raise, even though other co-workers at the same pay level and with lesser seniority who did not have a disability were given raises.

93.     Because Plaintiff engaged in the "protected activity" of filing a charge with the EEOC, Defendant penalized him in retaliation for this reporting by denying him a wage increase he otherwise would have received, refusing him accommodations he needed to communicate effectively at work, rejecting his request to be assigned to "confined space" projects, downgrading his work performance, and insultingly telling him that he had to figure out how "to hear what's going on."

WHEREAS, Defendant violated the prohibition against retaliation against individuals who engage in protected activity under the ADA, Plaintiff seeks the following relief and remedies:

a.     Economic Damages,

b.      Injunctive Relief,

c.      Compensatory Damages,

d.      Punitive Damages,

e.      Reasonable attorney's fees, witness fees, and other costs of litigation, and

f.      Any other relief or remedy deemed by the Court to be appropriate.

**Count 4: Violation of the Michigan Persons with Disabilities Civil Rights Act, MCL § 37.1110 *et seq.***

94.     Plaintiff incorporates the above allegations by reference here.

95.     Plaintiff is an individual with a disability as defined by the PDCRA.

96.     Defendant is Plaintiff's employer as defined by the PDCRA.

97.     Plaintiff was otherwise qualified to perform the essential duties of his regular position.

98.     Plaintiff requested in writing reasonable accommodations, including the provision of interpreters and adaptive devices, that were necessary for him to participate fully in mandatory meetings and training sessions.

99.     Defendant rejected Plaintiff's requests for accommodations, even though they were reasonable requests given the size of the employer.

100.  Defendant explicitly listed Plaintiff's deafness as a reason for downgrading his performance review.

101.  Defendant denied Plaintiff a wage increase when similarly situated co-workers were given wage increases.

102.  Plaintiff's supervisor made direct statements to Plaintiff expressing her discriminatory animus—specifically, telling him he would have to find a way "to hear what's going on."

103.  Defendant rejected Plaintiff's request for a work assignment that he was qualified to do and had done in the past and gave as the reason that it was because of his disability.

WHEREAS, Defendant has violated Plaintiff's rights under the PDCRA, Plaintiff seeks the remedies and relief available to him under MCL § 37.1606, including:

a.  An ORDER requiring Defendant to provide Plaintiff with the accommodation of a CART interpreting system for all meetings,

b.  An ORDER requiring Defendant to engage in a good-faith interactive process with Plaintiff aimed at accommodating his request to perform "confined space assignments,"

c.  Economic Damages,

    d.     Injunctive Relief,

    e.     Compensatory Damages,

    f.     Reasonable attorney's fees, witness fees, and other costs of litigation, and

    g.     Any other relief or remedy deemed by the Court to be appropriate.

### Count 5: Retaliation and Interference with Plaintiff's Efforts to Exercise his Rights under the PDCRA, MCL § 37.1602

104.  Plaintiff incorporates all the above allegations by reference here.

105.  Plaintiff sought to exercise his rights under the PDCRA through the facts alleged above, including seeking reasonable accommodations under the Act and reporting Defendant's failures to accommodate him to the EEOC.

106.  Because Plaintiff took these protected actions, Defendant denied him a wage increase which he otherwise would have received, downgraded his performance review for reasons directly related to his disability, made direct statements to him expressing animus towards him because he is deaf, and denied him a work assignment that he was qualified to perform.

WHEREAS, Defendant retaliated and discriminated against Plaintiff because he opposed Defendant's violations of his rights under the PDCRA and

took steps to enforce his rights, Plaintiff seeks the following relief and remedies

available to him under the PDCRA:

    a.    Economic Damages,

    b.    Injunctive Relief,

    c.    Compensatory Damages,

    d.    Reasonable attorney's fees, witness fees, and other costs of

          litigation, and

    e.    Any other relief or remedy deemed by the Court to be

          appropriate.


                        Respectfully submitted by:

                        **Pitt McGehee Palmer & Rivers PC**

                        */s/Robin B. Wagner*
                        Michael L. Pitt (P24429)
                        Robin B. Wagner (P79408)
                        Attorneys for Plaintiff
                        117 W. Fourth Street, Suite 200
                        Royal Oak, MI  48067
                        248-398-9800
                        mpitt@pittlawpc.com
                        rwagner@pittlawpc.com

Dated:  April 8, 2019

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| Curtis Young, | |
| Plaintiff, | Case No: <br> Hon. _____ <br> United States District Judge |
| v. | Hon. _____ <br> United States Magistrate Judge |
| Great Lakes Water Authority, | |
| Defendant. | |

## JURY DEMAND

Plaintiff, by and through his attorneys, Pitt McGehee Palmer & Rivers, P.C., hereby demand a trial by jury of all issues in the within cause of action.

PITT MCGEHEE PALMER & RIVERS

By:    /s/Robin B. Wagner
Michael L. Pitt (P24429)
Robin B. Wagner (P79408)
Attorneys for Plaintiff
117 W. Fourth Street, Suite 200
Royal Oak, MI  48067
248-398-9800
mpitt@pittlawpc.com
rwagner@pittlawpc.com

Dated:  April 8, 2019